UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHAWN GUSE and                                    CIV. NO. 13-800 (PJS/JSM)
ANGELA WOESSNER ,

      Plaintiffs,                          REPORT AND RECOMMENDATION

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
ELECTRONIC REGISTRATION SYSTEM, INC.,
MERSCORP HOLDINGS, INC.,

      Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 16].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),(B) and Local Rule 72.1(c).  Pursuant to this Court's Order dated September 9, 2013 [Docket No. 26] this Report and Recommendation is being issued based on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home. Plaintiffs assert three claims against defendants Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration System, Inc. ("MERS"), and MERSCORP Holdings, Inc. ("MERSCORP"): (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.      BACKGROUND

On April 5, 2013, plaintiffs, sued defendants in federal court.  See Docket No. 1.

Defendants moved to dismiss plaintiffs' Complaint in lieu of answering.  The facts

bearing on defendants' motion to dismiss are as follows.  On May 18, 2005, plaintiffs

executed a Note and Mortgage in favor of Marketplace Home Mortgage, LLC

("Marketplace").  See Complaint, ¶ 6, Ex. 1 (Mortgage).  The Mortgage listed MERS as

the nominee for Marketplace, as well as the mortgagee.  Id.  Plaintiffs    alleged   "upon

information and belief that Marketplace originated the loan for delivery to Fannie Mae

Id., ¶ 8.  Plaintiffs also claimed that a "MERS Servicer ID Report" showed that Fannie

Mae was an "investor" of the mortgage.  Id., ¶ 8, Ex. 2 (undated screenshot).

On May 10, 2011, Queshaylon Pea, Assistant Secretary of MERS, executed an

Assignment of Mortgage from MERS, as the nominee for Marketplace, to CitiMortgage,

Inc. ("Citi"), which was recorded in the Hennepin County Office of the Recorder on June

9, 2011.  Id., ¶ 9, Ex. 3 (Assignment of Mortgage).  Plaintiffs pled that "upon information

and belief" that Pea did not have the legal authority to execute the Assignment of

Mortgage, as Pea was not actually an employee of Citi on May 10, 2011.  Id., ¶ 10.

Plaintiffs also asserted that there was no evidence of Pea's power as an employee of

Citi to execute the foreclosure documents, since no such power was recorded in

violation of Minn. Stat. §§ 580.02 and 507.413.  Id.

On June 8, 2011, Brian Liebo, a partner at the law firm of Usset, Weingarden, &

Liebo, P.L.L.P ("Usset"), executed a Notice of Pendency to Foreclose on behalf of

MERS as the mortgagee and Citi as the assignee, which was recorded in the Hennepin

County Office of the Recorder on June 9, 2011.[1]  Id., ¶ 11, Ex. 4 (June 8, 2011 Notice of Pendency to Foreclose).  The Notice of Pendency provided that there was a pending foreclosure by advertisement of the Mortgage and that Usset had been employed as attorneys for the purpose of conducting such a foreclosure.  Id., Ex. 4.  Plaintiffs claimed "upon information and belief" that Liebo did not have the legal authority to execute the Notice of Pendency because at the time he executed the document, "MERS as nominee for Marketplace Home Mortgage LLC did not have any interest in the property as there exists an unrecorded assignment of mortgage to Fannie Mae."  Id., ¶ 12.

On June 16, 2011, Vickie Terry, Document Control Officer for Citi, executed a Notice of Pendency and Power of Attorney to Foreclose Mortgage, which was recorded in the Hennepin County Office of the Recorder on July 18, 2011.  Id., ¶ 13, Ex. 5 (June 16, 2011 Notice of Pendency and Power of Attorney to Foreclose Mortgage).  The Notice of Pendency and Power of Attorney gave Usset the power on behalf of Citi to foreclose the mortgage by advertisement and to bid for the Property at the foreclosure sale.  Id.  Plaintiffs asserted "upon information and belief" that Usset did not have the legal authority to execute the Notice of Pendency and Power of Attorney at the time it was executed "as MERS as nominee for Marketplace Home Mortgage LLC did not have any interest in the property as there exists an unrecorded assignment of mortgage to Fannie Mae."  Id., ¶ 14.

On June 2, 2011, Usset, on behalf of Citi, noticed a sheriff's sale for the Property and the sheriff's sale was conducted on August 4, 2011, at which time Usset exercised the power of sale clause in the Mortgage by bidding the debt owed by plaintiffs.  Id., ¶

---

[1]   The Notice of Pendency and Power of Attorney to Foreclose Mortgage was dated June 2, 2011, and executed before a notary on June 8, 2011.  Complaint, Ex. 5.

15, Ex. 6 (Sheriff's Certificate of Sale and Foreclosure Record).  The Sheriff's Certificate of Sale and Foreclosure Record were recorded in the Hennepin County Office of the Recorder on August 5, 2011.  Id.  According to plaintiffs, "Citi did not have the legal right to exercise the power of sale in the Mortgage because "upon information and belief," prior to the sheriff's sale, Citi had transferred the power of sale to Fannie Mae through an unrecorded assignment of mortgage.  Id., ¶¶ 15, 16.

December 30, 2011, plaintiffs, including Guse and Woessner (previously Angela Guse) filed a complaint in Hennepin County Court, entitled Jean Marie Anderson, et al. v. CitiMortgage, Inc. et al., No. 70-cv-11-28464, which was removed to Federal District Court on January 27, 2012, by defendants Citi, MERS, MERSCORP, RESI Whole Loan II LLC, Citigroup Global Markets, Realty Corp. and Federal and Home Loan Mortgage Corporation.  See Civil No. 12-cv-230.  The Amended Complaint in that action alleged: (1) a "Quiet Title" count (Count I), which included assertions that the Notices of Pendency, Powers of Attorney, and Assignments of Mortgages were not executed by authorized individuals, and that the Assignments of Mortgages were invalid (Amended Complaint [Docket No. 3], ¶¶ 41-44); (2) a "Declaratory Judgment" count (Count II) asserting that each plaintiff's note and mortgage was "transferred, assigned or sold into a trust underlying a mortgage-backed security" and asking the Court "to resolve and determine the terms of the trust agreements and to determine if Defendants have any true interest in or right to foreclose on their properties" (Amended Complaint, ¶¶ 45-53); (3) a "Declaratory Judgment" count (Count III) asking the Court  to declare the "rights and obligations arising under the Original Notes and Mortgages" (Amended Complaint, ¶¶ 54-59); and (4) a Slander of Title count (Count IV), alleging that "Defendants and

4

Law Firm maliciously published" foreclosure-related documents regarding the plaintiffs' properties, and falsely represented that defendants were entitled to enforce plaintiffs' mortgages, foreclose and take possession of their home.  Amended Complaint, ¶¶ 60-65.  On July 24, 2012, United States District Judge Ann D. Montgomery issued a Memorandum Opinion and Order granting the defendants' motions to dismiss and dismissed all claims in the case with prejudice.  See Civil No. 12-cv-230 [Docket Nos. 42 and 43].  The Eighth Circuit affirmed the District Court's decision.  See Civil No. 12-cv-230 [Docket Nos. 63, 64].

On March 7, 2013, Citi conveyed the Property via a Quit Claim Deed to Fannie Mae, which was recorded with the Hennepin County Office of the Recorder on March 12, 2013.  Id., Ex. 7 (Quit Claim Deed).  The Quit Claim Deed was executed by Jessica Eaton, Vice President of Document Control for Citi.  Id., ¶ 18, Ex. 7.  Plaintiffs' alleged "upon information and belief" that Eaton did not have legal authority to execute the Quit Claim Deed because Citi had no interest in the Property on March 13, 2013.  Id.

According to plaintiffs, Fannie Mae's Custodial Agreement requires that the lender deliver to the custodian a completed and executed assignment to Fannie Mae of the mortgage in a recordable but not recorded format, and an executed power of attorney to Fannie Mae to assign the mortgage.  Id., ¶ 20, Ex. 8 (form Custodial Agreement).  Plaintiffs also alleged that Fannie Mae's Seller/Servicer Guides require that when a servicer assigns a MERS-registered loan to Fannie Mae, the servicer must execute an assignment of the Mortgage to Fannie Mae.  Id., ¶ 21, Ex. 9 (October 30, 2009 Seller/Servicer Guide).

Based on the Custodial Agreement and the Seller/Servicer Guides, plaintiffs claimed there existed an unrecorded assignment of the Mortgage executed by MERS, as the nominee for Marketplace, to Fannie Mae, and therefore, Fannie Mae held the power of the sale contained in the Mortgage. Id., ¶ 22. Plaintiffs maintained that Citi foreclosed on the Mortgage despite knowing there was an unrecorded assignment of the Mortgage to Fannie Mae in violation of Minn. Stat. § 580.02. Id., ¶¶ 23, 24.

Plaintiffs alleged that on or about April 13, 2011, Usset received constructive notice that Citi had engaged in "unsafe and unsound" banking practices regarding foreclosures, because as of that date, Citi had entered into a Consent Order with the Officer of Comptroller of the Currency in which Citi did not contest that it had engaged in a variety of "unsafe and unsound" banking practices in conducting foreclosures. Id., ¶¶ 26, 27.

Plaintiffs asserted that Citi at all times knew or had reason to know that the Assignment of Mortgage, the June 2, 2011 Notice of Pendency, and the June 15, 2011 Notice of Pendency and Power of Attorney were void, and that the foreclosure violated Chapter 580 of the Minnesota Statues. Id., ¶ 31.

Plaintiffs alleged the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs asserted a quiet title action seeking a determination regarding defendants' adverse interest in the Property. Id., ¶¶ 36-42. According to plaintiffs, in a quiet title action, the burden of proof is on the mortgagee asserting an adverse interest in the property, and that a defendant must prove its title to the mortgage by preponderance of the evidence. Id., ¶¶ 39, 40. Plaintiffs maintained that defendants' claim to an interest in their Property

6

was void because there existed unrecorded assignments of Mortgage conveying the mortgagee's power of sale to third parties; Citi did not have the mortgagee's power of sale on the date of the sheriff's sale; and the foreclosure was void because the individuals executing the foreclosure documents did not have legal authority to execute the documents when they signed the documents, and defendants did not record the necessary powers of attorney authorizing the foreclosure. Id., ¶ 41.

In Count II, plaintiffs sought a declaratory judgment under Minn. Stat. § 555.02 that the various assignments of mortgage, notices of pendency and powers of attorney were all void, and that plaintiffs remained the owner of the Property in fee title. Id., ¶¶ 43-45.

In Count III, alleging slander of title, plaintiffs asserted that Usset, acting at direction of Citi, drafted and recorded documents that were false and not executed by legally authorized persons, and that Usset, at the direction of Citi, knew or should have known that the documents were false. Id., ¶¶ 46-51.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, the Assignment of Mortgage, and foreclosure-related documents were void; (3) a declaration that plaintiffs remained the owners of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Defendants moved to dismiss the Complaint, arguing that plaintiffs were barred by the preclusion doctrines of res judicata and collateral estoppel because plaintiffs had already had sued, litigated and lost the same claims and issues against Citi, MERS and MERSCORP in Anderson v. CitiMortgage, Inc., Civ. No. 12-230 (ADM/AJB), 2012 WL 3025100 (D. Minn. July 24, 2012) aff'd, 515 Fed. Appx. 644 (8th Cir. 2013).   See

Memorandum in Support of Defendant's Motion to Dismiss Complaint [Docket No. 18], pp. 11-15.

In addition, defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiffs' assertion that Citi had no authority to foreclose on their Property because there was an unrecorded assignment was based on conclusory "information and belief" allegations and unsupported assumptions that did not meet the pleading standards of Rules 8 and 9(b) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Id., pp. 15-17. Further, defendants asserted that plaintiff's quiet title claim failed because pursuant to Minnesota law, an unrecorded assignment would not invalidate Citi's right to foreclose; the Custodial Agreement, and Fannie Mae Seller/Servicer Guide do not apply to the Mortgage; the screenshot showing Fannie Mae as an investor in the Mortgage did not support plaintiffs' claim that the Mortgage had been assigned to Fannie Mae prior to the foreclosure sale; having defaulted on the note, plaintiffs have unclean hands and are not entitled the equitable relief afforded by the claim; and their claim is untimely because the right of redemption period had expired. Id., pp. 17-21.

As for the claim for declaratory relief, defendants argued that this claim failed because plaintiffs have not sufficiently pled any substantive claims and plaintiffs lack standing to challenge the Custodial Agreement or the Fannie Mae Seller/Servicer Guide. Id., pp. 25-26.

Finally, with regard to the slander of title claim, defendants submitted that it must be dismissed because the claim is based on the actions of a third-party, Usset, and

plaintiffs have not stated any facts to support the elements of the claim, much less meet the heightened pleading requirements of Rule 9(b).  Id., pp. 27-30.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Iqbal and Twombly.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

9

Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.   Fed. R. Civ. P. 12(d).   "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.   See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiffs fail to state a claim for relief and therefore, defendants' motion to dismiss should be granted.[2]

---

[2]   As this Court has determined that plaintiffs' underlying claims fail on the merits, it need not decide whether their claims are barred by issue and claim preclusion.   See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *5 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal

III.    **DISCUSSION**

A.    <u>**Quiet Title**</u>

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01.

Plaintiffs argued that their quiet title claim is proper since all they had to plead was that they were in possession of the Property and defendants had a claim adverse to them. <u>See</u> Memorandum in Opposition to Federal National Mortgage Association's Motion to Dismiss [Docket No. 23], pp. 15-17. According to plaintiffs, once these elements are pled, the burden shifted to defendants to provide the validity of their claim. <u>Id.</u>, pp. 16-17. Moreover, plaintiffs maintained the Federal Rules of Civil Procedure do not alter the burden of proof of their state law quit title claim. <u>Id.</u>, p. 18. Plaintiffs then contended that their quiet title claim was viable because there is an unrecorded assignment of the Mortgage held by Fannie Mae, as demonstrated by its servicing guidelines, rendering the foreclosure void under Minnesota law. <u>Id.</u>, pp. 18-21.

---

Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim. The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.). However, as other courts determined on facts and arguments virtually identical to those presented in the instant case, there is no question that plaintiffs' suit is barred based on the preclusion doctrines of collateral estoppel and <u>res judicata</u>. <u>See</u> <u>Pope v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 12-3094, 2013 WL 2251001, at *5-6 (D. Minn. May 22, 2013); <u>Welk v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4-5 (D. Minn. May 17, 2013); <u>Butler v. Fed. Nat'l Mortg. Ass'n</u>, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *6 (D. Minn. May 15, 2013).

Plaintiffs' arguments fail for several of reasons.

First, this Court rejects plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim. Plaintiffs' counsel made this exact argument in the past, and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, N.A., 518 F. App'x 498, 501 (8th Cir. 2013); 518 (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortgage Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument in a quiet title action advocated by plaintiffs. 704 F.3d at 548. As the court explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim. Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid." Welk v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013). Here, plaintiffs

> quiet title claims are based only on conclusory statements and speculation, but no facts.  The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standard governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, plaintiffs' allegations "upon information and belief" relating to an unrecorded assignment[3] (Complaint, ¶¶ 8, 12, 14, 16, 18), are insufficient to state a claim for relief.  See Karnatcheva, 704 F.3d at 548 (affirming the district court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that transfers affecting payees and assignments of the notes were invalid."); Yang Mee Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012),

---

[3]     Under Minn. Stat. § 358.50, an acknowledgment made in a representative capacity "is prima facie evidence" that the instrument or electronic record was executed and delivered with proper authority.

the Eighth Circuit and courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards proscribed by the Supreme Court in Iqbal and Twombly. See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2 Fed. Appx. 624, 2013 WL 1688903, at *1 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013).  Indeed, plaintiffs' allegations of unrecorded assignments of mortgage, are exactly the type of implausible allegations that Twombly and Iqbal prohibit, and decisions from this District have uniformly rejected. See, e.g., Pope, 2013 WL 2251001, at *3 (The Popes allege that "[u]pon information and belief, Freddie Mac acquired its interest in the [ ] mortgage prior to the commencement" of foreclosure proceedings but "[n]o assignment of mortgage from Wells to Freddie Mac appears in the records of the Ramsey County Recorder."  [ ] This is precisely the kind of implausible allegation that Twombly and Iqbal prohibit. The Popes ask the Court to assume that an assignment occurred because they allege it

14

occurred. But there is a more plausible explanation for the absence of any assignment in the Ramsey County records: there was no such assignment. The Court need not accept as true implausible allegations, as offered by the Popes here. To the extent their claims depend on this alleged unrecorded assignment, those claims fail to state claims on which relief can be granted.").

Here, the only "factual" support for plaintiffs' claim that there was an unrecorded assignment of their mortgage from MERS to Fannie Mae prior to the foreclosure – an unidentified and undated screenshot showing that Fannie Mae was an "investor" of the mortgage, the form Custodial Agreement, and Fannie Mae's Seller/Servicer Guides, (Complaint, ¶¶ 8, 20-22, Exs. 2, 8, 9) – cannot save plaintiffs' Complaint from dismissal.

For example, the unidentified and undated screenshot that plaintiffs have labeled "MERS Servicer ID Report" which describes Fannie Mae as the "investor", does not remotely support plaintiffs' theory that there was an unrecorded assignment of the mortgage from MERS to Fannie Mae <u>before</u> the foreclosure.  All that the this screenshot reflects is that Fannie Mae had acquired an interest in the Property at some point in time, which is entirely consistent with the Quit Claim Deed to it from Citi on March 7, 2013, that occurred well <u>after</u> the August 4, 2011 foreclosure sale.  <u>See</u> <u>Welk</u>, 2013 WL 2155463, at *3 (rejecting the same "evidence"—consisting of a screen shot of the MERS loan information page—and noting "[i]t is no surprise that Fannie Mae is listed as having an interest in October 2012—Fannie Mae acquired an interest from Wells Fargo in March 2011.  There is no plausible allegation that Fannie Mae acquired any interest before 2011"); <u>Butler</u>, 2013 WL 2145701, at *3 (rejecting the same "evidence"–a screen shot from the MERS loan finder website showing Fannie Mae as the "investor" for the

mortgage, and stating "this screen shot is only evidence that, on October 3, 2012, Fannie Mae had an interest in the mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of 'shot in the dark' allegation that does not meet Rule 8's pleading standards.  Thus, not only is there no factual support for plaintiffs' bald assertions, the record shows the exact opposite – the foreclosure and the subsequent quit claim deed were proper.").

Likewise, the language from the excerpts from the Fannie Mae Custodial Agreement or Servicer/Seller Guides, (Complaint, Exs. 8, 9), do not overcome the deficiencies in plaintiffs' Complaint, much less support a claim that there was an unrecorded assignment from MERS to Fannie Mae before the Assignment of the Mortgage in May 2011.  The Custodial Agreement is an unexecuted form document that makes no reference to MERS, Marketplace, Citi, plaintiffs, or to plaintiffs' Mortgage. See Complaint, Ex. 8 (form Custodial Agreement).

Moreover, the language relied upon by plaintiffs from the Custodial Agreement and Fannie Mae Seller/Servicer Guides also do not provide a plausible inference that an assignment to Fannie Mae actually occurred prior to the foreclosure.  Neither document require an actual and present assignment from the servicer to Fannie Mae.  Rather, they simply require the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae.  See, e.g., Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case.  Plaintiffs' allegations do not rise above

speculation."); <u>Cheng Lee v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae. This conclusory allegation is insufficient."); <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 853 F.Supp.2d 839, 848 (D. Minn. 2012), <u>aff'd</u>, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo. As a result, dismissal is warranted.").

In sum, where the facts before the Court indicate that MERS received from plaintiffs a Mortgage that was recorded; MERS assigned the Mortgage to Citi, which was recorded; and there is no evidence of any further transfers of interests in the Property in the record until after the foreclosure sale, when Fannie Mae received a quit claim deed on the Property, it is implausible that Fannie Mae had received an assignment of the Mortgage before the foreclosure. <u>See Welk</u>, 2013 WL 2155463, at *3 ("As Fannie Mae points out, such an assignment would be illogical, because, if Wells Fargo had assigned Mr. Welk's mortgage to Fannie Mae before 2011, there would be no reason for Wells Fargo to deed the property to Fannie Mae in 2011.").

Third, even if the Custodial Agreement and the Seller/Servicer Guide governed plaintiffs' Mortgage, plaintiffs lack standing to challenge a failure of any assignment required by these documents.  See Segura v. Fed. Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, at *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute."); Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute."); Butler, 2013 WL 2145701, at *4 (finding that as plaintiff was not a third-party beneficiary of the Fannie Mae Seller/Servicer Guide, "the contract and its requirements are simply not relevant to any harm [he] may have suffered.  If BAC did not perform as promised under the contract, then Fannie Mae may bring a claim against BAC. BAC's alleged failure, however, is not [plaintiff's] to contest or remedy.") (citations omitted); Lara, 2013 WL 3088728, at *3 (finding that the Seller/Servicer Guide "is at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties

on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if [WAMU or Chase] was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute.").

Fourth, plaintiffs' allegations on "information and belief" that Queshaylon Pea lacked signing authority on behalf of MERS to execute the Assignment of Mortgage or that Liebo and Terry lacked signing authority on behalf of Citi to execute foreclosure-related documents, (Complaint, ¶¶ 10, 11, 14), "do not hold up to even the slightest scrutiny."  See Simmer, 2013 WL 6244710, at *3 (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support them."); Segura, 2013 WL 3034096, at *2 (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.)); Welk, 2013 WL 2155463, at *4 (D. Minn., May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any

kind—no evidence pled supporting these allegations."); <u>Stilp v. HSBC Bank USA, N.A.</u>, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), <u>aff'd</u>, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.") (citations omitted).  Plaintiffs provided no factual support for these bald assertions.

However, even if plaintiffs' speculative statements regarding the signing authority of Pea, Leibo and Terry were true, plaintiffs suffered no injury in fact as a result and therefore, lack standing to pursue those claims.  <u>See Quale</u>, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative.") (citations omitted); <u>Forseth v. Bank of America, N.A.</u>, Civ. No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of

Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan.  There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims"); Kaylor v. Bank of America, N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2 (D. Minn. Sept. 7, 2011) (borrower lacks standing to challenge assignment of mortgage)); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113 (D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between

the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object."") (quoting Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 500 (Minn. 2009)).

Finally, as defendants argued, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands. Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao-Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp, 2013 WL 1175025, at *4 ("Plaintiffs defaulted on their mortgage loan over four years ago.  They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).

Having defaulted on their Mortgage, plaintiffs come to Court with unclean hands and are precluded from pursuing a quiet title claim.  Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim), aff'd, 518 F. App'x 498 (8th Cir. 2013).

For all the reasons stated above, the Court finds that defendants' motion to dismiss the quiet title action against them should be granted.

### B.   <u>Slander of Title</u>

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.   <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).   To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"   <u>Dunbar</u>, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").   The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.   <u>Kelly v. First State Bank of Rothsay</u>, 177 N.W. 347, 347 (Minn. 1920).

Further, a slander of tile claim is subject to the heightened pleading standard of Rule 9(b).   <u>See</u> <u>Murphy v. Aurora Loan Servs., LLC</u>, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); <u>see also</u> <u>Ko</u>, 2013 WL 3088728, at *4; <u>Pope</u>, 2013 WL 2251001, at *4; <u>Haubrich</u>, 2012 WL 3612023, at *6.

Plaintiffs responded to defendants' motion to dismiss their slander of title claim by merely restating the allegations from the Complaint.   <u>See</u> Pl.'s Mem., pp. 23-24.   The

Court finds the claim must be dismissed because plaintiffs have alleged no facts from which this Court could infer that defendants made a false statement, acted maliciously or that plaintiffs suffered any pecuniary loss from a publication concerning title to his property, much less facts that meet the heightened pleading requirements required by Rule 9(b.   See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

For all of these reasons, defendants' motion to dismiss plaintiffs' slander of title claim should be granted.

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara,

2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing <u>Weavewood, Inc. v. S & P Home Invs., LLC</u>, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[4]

## IV.  RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendants' Motion to Dismiss [Docket No. 16] be **GRANTED**.

---

[4]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  <u>Michaelis v. Neb. State Bar Ass'n.</u>, 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  <u>See McLean v. United States</u>, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (a <u>pro se</u> litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

2.      This matter be dismissed with prejudice.


Dated: January 22, 2014

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge



**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 5, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.